Opinion issued
May 26, 2011

 



In
The

Court of
Appeals

For
The

First District
of Texas

———————————

NO. 01-10-00680-CR

———————————

Jose
Sorto Jr.,
Appellant

 

V.

 

THE State of Texas, Appellee



 



 

On Appeal from the 412th
District Court

Brazoria County, Texas



Trial Court Case No. 61,645

 



 




 

MEMORANDUM
OPINION

 

          Jose
Sorto Jr. appeals his conviction for the first degree felony offense of
aggravated robbery.[1]  A jury found Sorto guilty and assessed his
punishment at 40 years’ confinement and imposed a fine of $10,000.  In his sole issue, Sorto asserts that the
evidence is legally insufficient to support the jury’s finding of guilt.  

          We
affirm.

Background

          On
the evening of December 13, 2009, Wayne Milone was at home with his friend
Wryan McCarty, his sister Tiffany, and her boyfriend Marshall Bevers.  He and McCarty were in the front room;
Tiffany and Bevers were in her bedroom.  The
State presented three witnesses who testified Sorto and three other men showed
up.  Wayne knew Sorto, but not well.  After a short visit, they all began playing
dominoes.  According to Tiffany’s
testimony, McCarty, Sorto, and Sorto’s friends were smoking marijuana that
day.   

          A short
time later, Wayne’s friend Trey West arrived and joined the game of dominoes.  After about 10 minutes, West saw that one of
the men with Sorto was holding a gun. 
The gunman said, “Nobody move.” 
The gunman and one other of the group that arrived with Sorto watched
West, Wayne, and McCarty, while Sorto grabbed a machete that was in the house and
the fourth man grabbed a baseball bat. 
They headed to the back bedroom.  

          Sorto
kicked open the locked door to the bedroom. 
Tiffany screamed.  When West heard
Tiffany (his former girlfriend) scream, he turned to the gunman and said,
“That’s my girl,” and began struggling with him.  West had noticed that the gun was not cocked
and the gunman did not have his finger on the trigger.  Sorto came out from the bedroom and struck
West with the flat of the blade on his leg and on his side.  Sorto raised the machete as if to strike West
in the head or neck area.  West raised
his arm in defense and Sorto struck West’s arm near the wrist, ending the
struggle.

          Sorto
and the three men told West to sit back down. 
Sorto took the gun, checked to make sure a round was chambered, cocked
it, and gave it back to the gunman, telling him, “Now don’t let him move.”  Sorto and the man who had grabbed the bat
began filling bags with property from the house, including electronics, cell
phones, jewelry, and clothing.  They gathered
more items for close to an hour.  During
this time West was sitting in a chair in the living room bleeding heavily.  He testified that he was getting cold and
feared that he would die.  Sorto and the
other men finally loaded the bags into a car and left.

          After
Sorto and the three other men left, McCarty took West to the hospital.   Tiffany called 911 on McCarty’s cell phone,
and Officer Fletcher with the Alvin Police Department was dispatched to Wayne’s
home.  Officer Fletcher interviewed Wayne
and Tiffany and took photographs of the house, including the damaged bedroom
door and the blood spatter from West’s wound. 
Fletcher testified that Wayne and Tiffany were intoxicated; they smelled
of alcohol and there were a number of empty beer cans lying around and in the
trash.  Officer Muhl went to the hospital,
where he interviewed McCarty and West.  Muhl
testified that he took photos of West, including the blood that was all over
his clothing and the wound to his arm. 
According to Muhl, West told him that they were all sitting around
drinking during a “get together” at Wayne’s house when a fight broke out.  West said he was struck with the machete
during the fight but that he did not know the person who struck him; West only
knew him as “Jose.”  

          At
trial, West identified Sorto as one of the men who stole property from Wayne’s
house.  He also identified Sorto as the
person who had struck him with the machete. 
West testified that as a result of his injury he had lost strength and
muscle tone in that hand.  He also said
that he had no feeling in part of his hand and he consequently burned himself frequently.  He testified that he may never regain feeling
in that hand.  On cross-examination by
Sorto’s counsel, West stated that drugs could be purchased at Wayne’s house.   

          Wayne
also identified Sorto as one of the men involved in the robbery and the person
who had struck West with a machete. 
Wayne denied being intoxicated.  On
cross-examination, Wayne agreed that he might have been drinking that day, but asserted
that he was sober enough to identify Sorto and that he “will never forget that
face.”

          McCarty
also testified that Sorto was one of the men who committed the robbery at Wayne’s
home and that Sorto was the person who had struck West with the machete.  During cross-examination, McCarty admitted
that he initially lied to police, telling them he was not at the Milone house, because
he had an outstanding arrest warrant for traffic tickets.  McCarty agreed that he lied to “protect his
rear end.”  Sorto’s counsel also
attempted to impeach the credibility of McCarty by showing that McCarty smoked
marijuana, but McCarty testified that, although he smelled marijuana in the
house, he did not smoke any.

          Tiffany
testified that Sorto kicked open the locked door to her bedroom and stole
property.  She also said Sorto and one
other man threatened her boyfriend, Bevers, with a gun and the machete,
prompting her scream.  After she
screamed, Sorto left the bedroom and came back with blood on the machete.  Tiffany asked if her brother was okay.  Sorto responded that he was okay, but “your
brother’s friend isn’t.”  Tiffany
testified that Sorto and the other men grabbed pillowcases and began filling
them with jewelry, clothing, and other property.  They took some pills and what looked like a
large amount of cash from Bevers.  Tiffany
testified that Wayne, McCarty, Sorto, and Sorto’s three friends were all
smoking marijuana and admitted she had been previously convicted of possession
of a controlled substance.  

          The
State also called Bevers, who was in jail at the time of trial.  Bevers, however, testified that he did not
remember being robbed or West being attacked with a machete.   

          In
his defense, Sorto presented evidence that he was in elsewhere when the robbery
occurred.  A family friend, with whom
Sorto was living, testified that Sorto generally worked from about 7 p.m. until
2 a.m. as a valet at a nightclub.  He had
an hour for lunch and would normally come home around 10 p.m. for 30 or 45
minutes to eat.  The friend testified
that Sorto was working on the night in question and came home to eat around
10:30.  A co-worker also testified that
Sorto worked that night.

Sufficiency of the Evidence

          In
his sole issue, Sorto contends that the evidence is legally insufficient to
support the jury’s finding of guilt.

A.      Standard of review

          This court
reviews sufficiency-of-the-evidence challenges applying the standard of review
enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,
2789 (1979).  See Ervin v. State, 331 S.W.3d 49, 52–55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d) (construing
holding of Brooks v. State, 323 S.W.3d 893, 912, 927–28 (Tex. Crim. App.
2010)).  Under this standard, evidence is
insufficient to support a conviction if, considering all the record evidence in
the light most favorable to the verdict, no rational factfinder could have
found that each essential element of the charged offense was proven beyond a
reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789;
Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We can hold
evidence to be insufficient under the Jackson standard in two
circumstances: (1) the record contains no evidence, or merely a “modicum” of
evidence, probative of an element of the offense, or (2) the evidence
conclusively establishes a reasonable doubt.  See Jackson, 443 U.S.
at 314, 320, 99 S. Ct. at 2786, 2789; see also Laster, 275 S.W.3d at
518; Williams, 235 S.W.3d at 750. 


The sufficiency-of-the-evidence
standard gives full play to the responsibility of the factfinder to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  See Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007); see also Brown v. State,
270 S.W.3d 564, 568 (Tex. Crim. App. 2008) (stating jury is sole judge of
credibility of witnesses and weight to give their testimony).  An
appellate court presumes that the factfinder resolved any conflicts in the
evidence in favor of the verdict and defers to that resolution, provided that
the resolution is rational.  See Jackson, 443 U.S. at 326, 99 S.
Ct. at 2793; see also Clayton, 235 S.W.3d at 778 (reviewing court
must “presume that the factfinder resolved the conflicts in favor of the
prosecution and therefore defer to that determination”).

The sufficiency of the evidence is measured by
the elements of the offense as defined by the hypothetically correct jury
charge for the case.  Wooley v. State, 273 S.W.3d 260, 268
(Tex. Crim. App. 2008).  This charge
accurately states the law, is authorized by the indictment, does not
unnecessarily increase the State’s burden of proof or restrict the State’s
theories of liability, and adequately describes the particular offense.  Grotti
v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).

B.      Sufficiency
of the evidence of aggravated robbery

          The Texas
Penal Code provides, in pertinent part, that a person commits robbery if the
person, “in the course of committing theft . . . and with intent to obtain or
maintain control of the property, . . . intentionally, knowingly, or recklessly
causes bodily injury to another . . . .” 
Tex. Penal Code Ann.
§ 29.02 (West 2003).  The offense is
elevated to aggravated robbery when the person uses or exhibits a deadly
weapon.  See Tex. Penal Code Ann.
§ 29.03(a)(2) (West 2003).  Thus, the
hypothetically correct jury charge would contain these elements.

          West
testified that, while Sorto and the three other men were stealing property from
Wayne’s house, Sorto struck him with a machete, causing a severe injury to his
arm and hand.  The testimony of a
single eyewitness is sufficient to support a conviction for aggravated robbery.  Johnson
v. State, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.] 2004,
pet. ref’d).  West’s testimony is
corroborated by other testimony.  Wayne
testified that Sorto was one of the group of men that stole property from his
home.  He also said Sorto struck West
with the machete.  McCarty also
identified Sorto as the man who robbed the house and stuck West with a
machete.  Tiffany identified Sorto as the
man who kicked open her bedroom door and was holding a machete.  He left the bedroom and returned with blood
on the machete.  When Tiffany asked if
her brother was alright, Sorto responded that her brother was okay, but “your
brother’s friend isn’t.”

          Sorto
impeached this testimony and on appeal asserts that these witnesses simply were
not credible.  He identifies Tiffany’s
testimony that Wayne and McCarty were smoking marijuana.  He also relies on Officer Fletcher’s
testimony that Wayne and Tiffany were intoxicated.  In addition, Sorto points out McCarty’s
initial false statement to police and admission that he lied to “save his own
rear end.”  Also, Bevers testified that
he had no recollection of a robbery or of West being struck with a
machete.  

The impeachment of this testimony
goes to its weight.  Brown, 270 S.W.3d at 568. 
Thus, the jury, as the exclusive judge of the credibility of the witnesses
and of the weight to be given their testimony, was entitled to resolve any
credibility determinations or conflicts in the evidence.  See id.  We presume that the jury made any such
determinations and resolutions in favor of its verdict.  See Jackson, 443 U.S. at 326,
99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

          We conclude that
a rational jury could have found that Sorto, in the course of committing theft,
caused bodily injury to West using a machete. 
Thus, the evidence is legally sufficient.   We overrule Sorto’s sole issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel consists of Chief
Justice Radack and Justices Sharp and Brown.

Do not publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. §§ 29.02, 29.03(a)(2) (West 2003).